CAMPBELL SOUP COMPANY, PLAINTIFF-APPELLANT, v. BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, ETC., AND ANOTHER, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 26, 1952—Decided June 5, 1952.

Before Judges EASTWOOD, BIGELOW and FRANCIS.

*Mr. Grover C. Richman* argued the cause for the appellant.

*Mr. Clarence F. McGovern* argued the cause for the respondent Board of Review, etc.

*Mr. Abraham Greenberg* argued the cause for the respondent Jesse Tomlinson.

The opinion of the court was delivered by

BIGELOW, J. A. D.   This case arises under our Unemployment Compensation Law, *R. S.* 43:21-1 *etc.*   The appellant conducts a large plant in which employment varies greatly with the seasons.   The respondent Jesse Tomlinson

was one of appellant's employees who were laid off in April, 1950. He filed a claim for unemployment compensation and received benefits each week to and including the week ending Thursday, July 6. But on July 5, 1950, he had reported back to work. Later, the agency determined that he must refund the benefits for that week. The only benefits received by him that are still involved in this proceeding are the payments allocated to the last two weeks in June.

Relations between appellant and its employees were the subject of a contract in which the company had agreed to give all employees who had the requisite seniority "as of the eligibility date of July 1st, two weeks' vacation with pay." "It is the Company's prerogative to determine when the vacation period shall take place." The agreed "vacation payment" was not two weeks' pay at the rate which the employee received when working, but was four per cent of his total earnings for the year ending in the preceding April. The company considered that employees, like Tomlinson, who had been laid off before July 1 and were not called back till after that date, were not entitled to vacations or vacation payments. The union held the view that they were entitled to vacation pay. By the end of August, the company accepted the union's position and in a letter dated September 1, 1950, said: "We will pay to employees laid off on or after March 22, 1950, who were not actively employed on the eligibility date of July 1st and who were reinstated thereafter with seniority before January 1, 1951, their vacation payment." Pursuant thereto, the company gave to Tomlinson on September 15 its check for $59.59. It was in form an ordinary payroll check for "Week ending 9-10-50" but was stamped "Vacation." In addition, the company paid Tomlinson his earned wages for the week ending September 10, 1950. Such are the bare facts on which the appellant relies. Now as to the proceeding before us.

The company, under date of September 7, 1950, addressed a letter to the agency's office in Camden, saying, "We are forwarding pertinent information on our employees who will

receive vacation pay for the vacation period which covered the first two full calendar weeks in July. All of these employees returned to work on or before July 17, 1950. Kindly advise us what disposition will be made on any unemployment benefits paid to the claimant during the period which they received vacation pay." This letter was, perhaps, the cause of an inquiry made by the agency, in which the fact was developed that Tomlinson worked two days in the last week for which he had received unemployment compensation, had been paid for those two days and was not entitled to unemployment benefits for that week. The agency so determined and on November 6, 1950, notified Tomlinson and, pursuant to *R. S.* 43:21–16(*d*), demanded that he refund the benefits which he had received for that week. The wages paid Tomlinson for those two days early in July were entirely distinct from the vacation pay mentioned in the letter of September 7.

Also that letter was accepted by the appeal tribunal of the agency as an appeal "from the payment of benefits for any part of the first two calendar weeks of July, 1950." Since the agency had demanded a refund of all benefits received by Tomlinson for any part of July, the appeal tribunal decided that "Therefore, there is no issue before the Tribunal." Within the 10-day period allowed by *R. S.* 43:21–6(*c*), the company appealed to the board of review, and urged for the first time that the vacation payment made in September, 1950, should be applied to the "last two weeks preceding the claimants' recall to work." It argued that those two weeks should be considered Tomlinson's vacation. The board rendered its decision September 14, 1951, that "The claimant was eligible for benefits through June 29, 1950. He was ineligible thereafter." From that decision, the company appeals to this court.

The company points out that its contract gives it the "prerogative to determine when the vacation period shall take place." The meaning of this clause is not uncertain. The right to set the time for an employee's vacation was given

the company so that it could fix a time that would not interfere with the company's operations. The company in the spring could direct Tomlinson to take the last two weeks in June; but under the contract it had no right in February or in September to tell him that the two weeks of the preceding June had been his vacation. The idea of asserting that those particular weeks had been his vacation seems not to have occurred to the company until February, 1951, when it appealed to the board of review. In September it had advanced what may be called the theory of a constructive vacation, and it suggested that the first two weeks in July be considered as the vacation, probably because the company annually shut down its plant for those two weeks and gave everyone a vacation except maintenance crews and the like. But in August, 1950, in the negotiations with the union, the parties seem to have reached an understanding that the men who had been laid off in the spring would not have any vacations that year but nevertheless would receive vacation pay calculated in the manner prescribed by the contract. If the company had told the union that in exchange for vacation pay the men would lose their unemployment compensation for two weeks, a settlement might have been harder to reach. The last two weeks preceding Tomlinson's return to work were not a vacation. He was actively hunting for work, out of a job, wondering whether and when he would be recalled by appellant. Nor did he ever receive vacation pay that was allocable to those weeks. We find no merit in the company's appeal.

Even did we agree with the company's contention respecting the allocation of the September payment, we doubt if the appeal could be sustained, since there would still seem to be no basis for holding Tomlinson liable under *R. S.* 43:21-16(*d*) to refund the benefits or to give credit against future benefits, and, at best, a doubtful basis for deciding that the company's account should not be charged with the benefits paid.

The determination of the board of review is affirmed.